UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO ARIAS,

        Petitioner,

        v.

BLAINE LAFLER,

        Respondent.

_____/

CASE NO. 2:07-CV-15465
JUDGE ANNA DIGGS TAYLOR
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Evidence Claims (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    *Confrontation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.    *Speculative Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    E.    *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.    *Jury Instruction Claim (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    G.    *Ineffective Assistance of Counsel (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
            a. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . 26
            b. Failure to Present Evidence of Lack of Flight . . . . . . . . . . . . . . . . . . . . . 27
            c. Failure to Object to Evidence of Prior Conviction . . . . . . . . . . . . . . . . . . 28
            d. Failure to Object to Crack Cocaine Evidence . . . . . . . . . . . . . . . . . . . . . 29
            e. Evidentiary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Ricardo Arias is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

2.      On February 27, 2004, petitioner was convicted of possession of 650 grams or more of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(I), following a jury trial in the Oakland County Circuit Court.  On March 2, 2004, he was sentenced to a term of life imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE FOLLOWING EVIDENTIARY RULINGS DENIED APPELLANT
        DUE PROCESS OF LAW:

        a.      The trial court denied appellant the right to confrontation by
                allowing the testimonial statements of a confidential
                informant into evidence.

        b.      The trial court permitted speculative and prejudicial testimony
                concerning what level of drug dealing the defendants were at.

II.     PROSECUTORIAL MISCONDUCT DENIED DUE PROCESS OF LAW
        IN THE FOLLOWING WAYS:

        a.      The prosecutor used bolstering, vouching and inadmissible hearsay
                in order to obtain a conviction.

        b.      The prosecutor asked the jury to speculate, offered irrelevant
                evidence, and made a civic duty argument in to [sic] obtain this guilty
                verdict.

        c.      The prosecution commented on defendant's exercise of his right to
                remain silent and also shifted the burden of proof.

2

       d.     In Rebuttal, the prosecution attacked defense counsel.

III.     APPELLANT WAS DENIED DUE PROCESS OF LAW AND THE RIGHT TO A PROPERLY INSTRUCTED JURY IN THE FOLLOWING MANNER:

       a.     Where the evidence of flight was insufficient, the trial court erred in charging the jury on flight.

       b.     The trial court erred when it instructed the jury on the offense of possession of over 650 grams.

IV.     APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE FOLLOWING WAYS:

       a.     Counsel failed to object to prosecutorial misconduct.

       b.     Counsel failed to offer evidence that defendant did not attempt to flee.

       c.     Counsel failed to object to testimony which informed the jury that defendant had a criminal record.

       d.     Counsel failed to object to testimony about crack cocaine.

V.     THE SENTENCING SCHEME FOUND IN MCL 333.7401 AND MCL 333.7403 IS ARBITRARY AND LACKS PROPORTIONALITY THEREBY VIOLATING THE CONSTITUTIONAL BAN ON CRUEL AND/OR UNUSUAL PUNISHMENTS AND THE RIGHT TO DUE PROCESS OF LAW.

VI.     THE MAGISTRATE BOUND DEFENDANT OVER FOR TRIAL ON FACTS NOT FOUND IN THE RECORD AND THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO QUASH.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Arias*, No. 255428, 2006 WL 119143 (Mich. Ct. App. Jan. 17, 2006) (per curiam).

Judge Cooper dissented in part, finding that petitioner's confrontation claim was preserved and meritorious. *See id.* at *14-*17, slip op. at 1-5 (Cooper, J., concurring in part and dissenting in part).

     4.     Petitioner, through counsel sought leave to appeal these issues to the Michigan

Supreme Court, with the exception of his bind-over claim. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Arias*, 477 Mich. 873, 721 N.W.2d 585 (2006).

5.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on December 26, 2007. As grounds for the writ of habeas corpus, he raises the confrontation, evidence, prosecutorial misconduct, jury instruction, and ineffective assistance claims that he raised in the state courts.

6.      Respondent filed his answer on July 3, 2008. He contends that petitioner's claims are without merit.

7.      Petitioner filed a reply to respondent's answer on August 11, 2008.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was summarized by the Michigan Court of Appeals:

> Defendant's conviction arises from his alleged involvement in drug trafficking on February 7, 2002 along with two other codefendants, Pablo Bonilla and Cory Hudson. In late 2001, through early 2002, the Pontiac police investigated drug trafficking into Pontiac, and developed the names "Cory," "Pablo," and "Ricky," along with general descriptions and an address in Detroit. The police subsequently set up surveillance of the area and observed all three codefendants at the Detroit residence on February 6, 2002. Evidence was presented that the police observed the three defendants arrive at the residence in three separate vehicles the following day, February 7, 2002. Shortly thereafter, officers observed defendant, and codefendants Bonilla and Hudson come out of the house, and briefly converse in the street. Thereafter, codefendant Bonilla got into the passenger side of a pickup truck that defendant was driving. Codefendant Hudson removed a dark jacket from the car that he was previously driving, and walked over to a Taurus. The Taurus and pickup truck then left simultaneously, with the pickup truck in the lead, and continued to travel from Detroit to Pontiac in tandem for approximately an hour. There was testimony that the Taurus closely followed the pickup truck, including switching lanes only when the pickup truck did so. Additionally, there was testimony that, when the police stopped the Taurus, the pickup truck immediately

4

"crossed three lanes," made a U-turn, slowly drove past where the Taurus was stopped, and then sped away, disregarding traffic laws.  When the police stopped the Taurus, codefendant [Hudson] was the sole rear-seat passenger.[1]  When the police removed codefendant [Hudson] from the vehicle, he was sitting on a black jacket covering a "brick" of more than 916 grams of cocaine.

*Arias*, 2006 WL 119143, at *1, slip op. at 1-2 (footnote omitted).

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

---

[1]The court of appeals opinion identifies codefendant Bonilla as the rear-seat passenger in the Taurus.  There was some confusion in the testimony at trial regarding the identify of the rear-seat passenger, but a review of the trial transcripts makes clear that codefendant Hudson was the passenger in the Taurus being driven by an unidentified female, while codefendant Bonilla was riding in the pickup truck driven by petitioner.

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Evidence Claims (Claim I)*

Petitioner raises first raises two evidentiary claims. Specifically, petitioner contends that he was denied his right to confront the witnesses by the introduction of informant testimony, and that he was denied a fair trial by the introduction of speculative testimony. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Confrontation*

Petitioner first contends that he was denied his right to confront the witnesses by the introduction of police office testimony that they had received reports that petitioner and his codefendants were involved in narcotics trafficking.

a. *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due

7

Process Clause.  *See Pointer v. Texas*, 480 U.S. 400, 406 (1965).  At the time of petitioner's trial, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).  In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings.  Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability."  Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.  As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception.  The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability."  *Idaho v. Wright*, 497 U.S. 805, 821 (1990).  Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection."  *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), decided shortly after petitioner's trial, the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements.  After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable,

8

and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59.  The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68.  The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69.  In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68.  The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted).  While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

*Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay.  The question therefore remains whether *Roberts* has any applicability to this case to the extent that the statements admitted at petitioner's trial were not

9

testimonial hearsay under *Crawford*.  Because it is now clear that the Confrontation Clause is not

at all concerned with non-testimonial hearsay, the Court should conclude that *Roberts* has no

application here.  In *Crawford*, the Court suggested, but did not definitively rule, that the

Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no

application at all to the admission at trial of non-testimonial hearsay.  The Court explained that

"[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford

the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach

that exempted all such statements from Confrontation Clause scrutiny altogether."  *Crawford*, 541

U.S. at 68.   Immediately following *Crawford*, the Courts concluded that *Roberts* remained

applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction  between testimonial
> and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only
> to the former category of statements. . . . [U]nless a particular hearsay statement
> qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d

75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005);

*United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004).  Regardless of whether this

reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the

Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay.  In

*Davis v. Washington*, 547 U.S. 813 (2006), the Court explicitly addressed this question of "whether

the Confrontation Clause applies only to testimonial hearsay," *id*. at 823, and in doing so abrogated

*Roberts* in whole.  The Court noted that the answer to this question was suggested in *Crawford*,

when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who

give "testimony."  *Id*. at 823-24 (discussing *Crawford*, 541 U.S. at 51).  The *Davis* Court explained

10

that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id*. at 824  Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered.  *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability.  Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. 2008); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

### b.  Analysis

Petitioner contends that he was denied his right to confront the witnesses against him by the introduction of police officer testimony regarding their investigation of petitioner and his codefendants.  At trial, Officer Jeremy Pittman testified, over petitioner's objection, that he was investigating drug dealing in Pontiac.  During the course of his investigation, he developed suspects that he believed were the suppliers of the cocaine being brought into Pontiac.  Specifically, he had the first names of Cory, Pablo, and Ricky, as well as a physical description of each.  He also had a description of Ricky's pick-up truck and an address in Detroit out of where the three suspects may have been operating.  *See* Trial Tr., Vol. I, at 218-21.  He used this information to begin surveillance of the Detroit location, ultimately leading to the following of the defendants and their arrest. Sergeant Michale Story similarly testified.  *See id*., Vol. III, at 271-72.

On appeal, petitioner contended that this testimony constituted inadmissible hearsay and violated his right to confront the witnesses against him, namely, the informants who supplied the

11

police with their names and descriptions.  The Michigan Court of Appeals rejected this claim, explaining:

> Here, *Crawford* is not implicated because the contested statements are not hearsay.  Hearsay, which is a statement other than one made by the declarant while testifying at trial or hearing offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction.  The challenged testimony was not attributed to an informant or any other declarant.  Further, the challenged testimony was not offered to prove the truth of the matter asserted, i.e., that the defendants were drug dealers.  Rather, the trial court exercised its discretion and overruled the defendants' hearsay objections, and allowed the testimony as "background information" for the limited purpose of explaining the officers' subsequent actions, e.g., setting up surveillance of codefendant Bonilla's residence and subsequently following the two vehicles.  As noted by the prosecutor, "the jury is entitled to have some context.  It wasn't just a bunch of police officers out there just pulling over cars."  Because the statements were admitted for the limited purpose of providing background information, they did not constitute hearsay, or statements of an absent declarant such that defendant's confrontation rights were violated.

*Arias*, 2006 WL 119143, at *2, slip op. at 3.  The court of appeals also concluded that the error was harmless, because "[n]one of the three defendants were convicted of possession with intent to deliver 650 grams or more of cocaine.  And, defendant's conviction for possession of 650 grams or more of cocaine was supported separately and independently of the challenged testimony."  *Id*. at *3, slip op. at 4.

Under the universal understanding of the hearsay rule, hearsay testimony consists of out of court statements by a declarant other than the witness testifying which are offered in evidence to prove the truth of the matter asserted in the statement.  Where non-hearsay is at issue, however, the Confrontation Clause is simply not implicated.  As the *Crawford* Court itself recognized, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford*, 541 U.S. at 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  Thus, the question here is whether the Michigan Court of Appeals's

12

determination that the evidence was not offered to prove the truth of the matter asserted was a reasonable one.

In support of his argument that the court of appeals's determination was unreasonable, petitioner principally relies on the Sixth Circuit's decision in *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004). In that case, as here, a police officer testified as to information given to her regarding the defendant's drug trafficking activities as background information to provide the jury with context regarding the information. *See id.* at 666-70. After concluding that statements by confidential informants to the police are "testimonial" under *Crawford*, *see id.* at 674-75, the Sixth Circuit proceeded to consider whether any of the police officer's testimony implicated the Confrontation Clause. For purposes of this analysis, the court divided the officer's testimony into three categories: (1) testimony regarding the informant's information that drug activity was occurring at a particular address; (2) testimony regarding specific suspects that the police had when they began the investigation; and (3) testimony regarding the physical description of the suspects provided by the informant. With respect to the first category of statements, the court concluded that the statements were not offered to prove the truth of the matter asserted–*i.e.*, that drug activity was actually occurring at the residence–but to show why the police targeted that particular house. Because this testimony was provided merely by way of background, it did not implicate the Confrontation Clause. *See id.* at 676. The other two categories, however, did implicate the Confrontation Clause. The court explained that the testimony regarding the identity of the suspects and their physical description "more clearly place[d] before the jury information provided by a CI, [and] . . . also implicated Cromer in a way that went to the very heart of the prosecutor's case." *Id.* at 677 (internal quotation omitted). The court concluded that any attempt to link the informant's

statement to the officer's conduct was a "sham," and that the true purpose of the testimony was to prove the truth of the matter asserted–that is, that the defendant was engaging in illegal activity. *See id*. The Sixth Circuit has reached similar conclusions in other cases. *See United States v. Powers*, 500 F.3d 500 (6th Cir. 2007); *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007); *United States v. Pugh*, 405 F.3d 390 (6th Cir. 2005).

Petitioner correctly notes that the facts of his case are virtually indistinguishable from those in *Cromer* and its progeny. This fact alone, however, does not establish petitioner's entitlement to habeas relief. Even assuming that *Cromer* correctly applies *Crawford* and that the Michigan Court of Appeals's determination was "wrong," petitioner is entitled to habeas relief only if the court of appeals's determination was objectively unreasonable. As the Supreme Court has explained, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. Further, under § 2254(d)(1), the court of appeals's determination must have been an unreasonable application of clearly established Supreme Court precedent, not of Sixth Circuit cases addressing the issue. While *Cromer* and other court decisions applying *Crawford* in similar factual settings are certainly relevant in determining whether the Michigan Court of Appeals's determination was reasonable, the fact that the court of appeals's determination differed from *Cromer* is not alone dispositive of this question. Thus, the question before the Court is whether, in light of the law as it existed at the time of the court of appeals's decision, its determination that there was no Confrontation Clause violation was objectively reasonable.

The Court need not, however, resolve this difficult question, because even if the introduction of this evidence violated the Confrontation Clause and the court of appeals's contrary conclusion was unreasonable, the admission of the evidence was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court held that trial error does not entitle state prisoners to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Confrontation Clause violations are subject to harmless error analysis. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999). Here, even under *Cromer*, the police officers' testimony regarding the informant's tip that drug activity was occurring at the Detroit residence would have been admissible as non-hearsay background information. Thus, if any evidence were inadmissible under the Confrontation Clause, it would only have been the evidence identifying petitioner and his codefendants by name and description. As Judge Cooper explained in her opinion concurring in the judgment, significant other evidence of petitioner's guilt was presented: "Officers witnessed the codefendants traveling from a suspected drug house toward the city of Pontiac in two vehicles. When a marked police unit pulled one vehicle over, the other vehicle made a U-turn and drove away at a high rate of speed while weaving in and out of traffic. Officers found Mr. Hudson sitting on a package containing one kilogram of cocaine. Forensic scientists subsequently discovered fingerprints belonging to both defendant and Mr. Bonilla on the tape used to seal that package." *Arias*, 2006 WL 119143, at *17, slip op. at 5 (Cooper, J., concurring in part and dissenting in part). Thus, even without the testimony that petitioner was involved in drug activity at the Detroit house, the jury would have had before it evidence that petitioner was at a suspected drug house with two other people, left with them in two separate cars which mirrored each other's movements, and fled the area when the other car was

15

pulled over, showing a concert of action by all three of the codefendants. The evidence before the jury would also have shown that cocaine was found in the other car, and that petitioner's fingerprint was on the packaging. This evidence would have been more than sufficient for the jury to conclude that petitioner had actually or constructively possessed the cocaine, *see United States v. Hastamoir*, 881 F.2d 1551, 1557-58 (11th Cir. 1989); *United States v. Hernandez*, 842 F.2d 82, 88 (5th Cir. 1988), and the absence of the confidential informant testimony regarding the identity of the suspects would not likely have changed the result. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    2.    *Speculative Testimony*

    Petitioner next contends that he was deprived of a fair trial by the introduction of speculative testimony regarding "upper-tier" drug dealing. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

    a.  *Clearly Established Law*

    It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state

16

court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."  *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

*b. Analysis*

Petitioner contends that he was denied a fair trial by speculative testimony from Officer Story regarding the characteristics of "upper-tier" drug dealing.  In response to a question from the prosecutor asking why so many officers and vehicles were involved in the surveillance, Officer Story testified:

> It's common practice in narcotics transactions of that type that there will be multiple people involved in it, as oftentimes somebody will 'mule,' which is actually have the narcotics with them.
> They'll be usually not alone in a car.  There'll usually be somebody with

17

them, and there's usually a support – a counter-surveillance team basically that the traffickers will use to look for the police or to defend their – to defendant their product against possible rip-off or a police action.

Trial Tr., Vol. III, at 9-10.  Petitioner contends that this testimony about the common practice of drug dealers was impermissibly speculative and deprived him of a fair trial.  The Court should disagree.

As a general rule, "evidence of the practices of drug traffickers is admissible evidence." *Valasquez v. Lafler*, No. 05-73281, 2008 WL 3200290, at *9 (E.D. Mich. Aug. 5, 2008) (Roberts, J.) (citing *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2008); *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990)).  It is true that some courts, on direct review of criminal convictions, have found error in the admission of drug profile evidence.  Even assuming that these cases demonstrate that the admission of drug profile evidence amounts to a constitutional violation, *but see Gonzales v. Jones*, No. 99-CV-73015, 2001 WL 278257, at *4 (E.D. Mich. Feb. 2, 2001) (Duggan, J.), petitioner cannot show that impermissible drug profile was introduced.  Drug profile evidence involves an "attempt . . . to establish the activities or a stereotypical drug dealer followed by suggestions that the petitioner conformed to that profile."  *Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674 (E.D. Mich. 2004) (Lawson, J.).  Here, Officer Story did not testify that petitioner conformed to the drug courier profile and was therefore guilty, nor did the prosecutor suggest that this was the case during closing argument.  Rather, Officer Story's testimony was made in response to a specific question about why so many officers and vehicles were involved in the surveillance and stop of petitioner.  *See United States v. Lui*, 941 F.2d 844, 847 (9th Cir. 1991) (drug profile evidence admissible to show background regarding how the arrest occurred).

Further, petitioner cannot show how the introduction of this evidence deprived him of a fair

trial in light of the fact that he was acquitted of the possession with intent to distribute charge. The drug profile evidence–relating to the typical activities of drug dealers–most naturally would have affected the jury's assessment of whether petitioner was a drug dealer–that is, whether he intended to distribute the cocaine. As noted above, his simple possession was established by his concerted action with the codefendants coupled with the evidence of his fingerprint on the packaging. Because the jury acquitted petitioner of the intent to deliver charge, petitioner cannot show that he was denied a fair trial by the introduction of this evidence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Prosecutorial Misconduct (Claim II)*

Petitioner next claims that he was denied a fair trial by several instances of prosecutorial misconduct at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally

19

placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

     2.    *Analysis*

Petitioner first contends that he was denied a fair trial by the prosecutor's comments regarding the names and descriptions developed by the police through the confidential informant. During opening statement, the prosecutor indicated that the Pontiac Police Department began an investigation into drug dealing in the city, and developed some information and some suspects, specifically, the three codefendants. *See* Trial Tr., Vol. I, at 198-99. During closing argument, the prosecutor explained the police surveillance by noting that the police had developed some suspects including the codefendants. *See id*., Vol. III, at 8-9. The prosecutor twice indicated that the fact that petitioner and his codefendants were suspects was not in and of itself a crime or evidence of a crime, but that it did explain why the police where at the Detroit house in the first place. *See id*. Petitioner argues that because this information amounted to inadmissible hearsay the introduction of which violated his right to confront the witnesses against him, the prosecutor's comments amounted to prejudicial misconduct. The Court should disagree.

The prosecutor's comments themselves did not refer to the confidential informant or indicate the source of the police suspicion, and the prosecutor twice indicated that the fact that petitioner was a suspect was not evidence of guilt. Further, because the state courts concluded that this evidence was admissible, the prosecutor did not commit misconduct by introducing the evidence or commenting on it during argument. *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997);

*Hammond v. Michigan Parole Bd.*, No. 04-73385, 2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006) (Roberts, J., adopting Recommendation of Komives, M.J.).

Petitioner also contends that the prosecutor committed misconduct by referring to petitioner and his codefendants as "major" drug dealers and eliciting from police witnesses that they were investigating mid-level drug dealing. Petitioner does not indicate, however, how this testimony deprived him of a fair trial. It was clear from the amount of cocaine recovered, an amount stipulated by petitioner, that significant drug dealing was involved. The police witnesses' description of the activity as involving mid-level or "major" drug dealing did not influence the jury's verdict, as evidenced by the fact that the jury acquitted petitioner of the intent to distribute charge, convicting him only of possessing the cocaine.

Petitioner also contends that he was denied a fair trial by the prosecutor's description of the cocaine as having a street value exceeding that of a college education. *See* Trial Tr., Vol. I, at 198, 206. However, the value of the drugs was relevant to the intent to distribute charge, and while the prosecutor might have made the same point with less flourish, the prosecutor's equating the value of the cocaine to a real-life expense did not deprive petitioner of a fair trial. Again, this is particularly so in light of the fact that petitioner was acquitted of the intent to deliver charge.

Petitioner next contends that he was denied a fair trial when the prosecutor stated that "[e]very single case, before it gets here, to get here is judicially approved probable cause. Every one of them have come through here with a finding of probable cause." Trial Tr., Vol. III, at 83. However, this comment was invited by, and was a direct response to, defense counsel's statement during closing argument that the police did not even have probable cause. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (an important factor in evaluating the permissibility of

21

prosecutorial comments is whether the prosecutor's statements were "invited by or was responsive" to the defense). Further, the prosecutor himself immediately followed this argument with the comment that the jury was "ultimately . . . not concerned about probable cause. You're concerned about me proving my case beyond a reasonable doubt. But I wanted you to know the response to those wild accusations." Trial Tr., Vol. III, at 83. In these circumstances, the prosecutor's comment was not improper or prejudicial.

Finally, petitioner contends that the prosecutor improperly shifted the burden of proof and commented on his failure to testify by arguing to the jury that there was no evidence presented to contradict Sergeant Nowicki's testimony regarding the fingerprint evidence or Officer Pittman's testimony that the weight was indicative of an intent to distribute. Although a prosecutor's indirect comment on a defendant's failure to testify or produce evidence, such as a statement that the prosecutor's evidence is uncontradicted, may be unconstitutional, not every such comment is impermissible. Rather, the constitutionality of the indirect reference depends on the circumstances of the case. *See, e.g.*, *Lockett v. Ohio*, 438 U.S. 586, 594-95 (1978). A prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C. Cir. 1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). In order to conclude that the prosecutor's remarks amounted to an impermissible comment on petitioner's failure to testify, the Court "must find one of two things: that the prosecutor's manifest intention was to comment upon the accused's failure to testify or that the remark was of such a character that the jury would naturally and necessarily

22

take it to be a comment of the failure of the accused to testify." *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981) (internal quotations omitted); *accord Byrd v. Collins*, 209 F.3d 486, 533-34 (6th Cir. 2000); *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988).

Here, the prosecutor's comment was not manifestly intended to comment on petitioner's failure to testify, nor would it necessarily have been interpreted by the jury as such. The prosecutor did not in any way suggest that petitioner had any duty to testify or come forward with any evidence. Rather, the prosecutor noted, correctly, that two particular pieces of testimony were uncontradicted. Further, the nature of this evidence went to expert or specialized testimony regarding fingerprints and drug distribution practices, and thus is not the type of evidence which could have been rebutted only through the testimony of petitioner. And it is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *Bautista*, 23 F.3d at 733; *accord United States v. Robles-Vertiz*, 155 F.3d 725, 731 (5th Cir. 1998). Further, any ambiguity that the prosecutor's argument may have created for the jury on the matter of the burden of proof was cured by the trial court's instructions on the proper burden of proof. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002); *Lugo v. Kuhlmann*, 68 F. Supp. 2d 347, 369 (S.D.N.Y. 1999). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

F.     *Jury Instruction Claim (Claim III)*

Petitioner next contends that he was denied a fair trial by the trial court's giving the jury an instruction on flight. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

23

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

    2.    *Analysis*

Petitioner contends that an instruction on flight was inappropriate because there was no evidence that he fled or failed to stop when ordered to do so by the police.  The Michigan Court of Appeals disagreed, concluding that the instruction was appropriate under state law.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Contrary to petitioner's argument, there was evidence presented at trial to support a flight instruction.  As the Michigan Court of Appeals has explained: "It is well established in Michigan

24

law that evidence of flight is admissible.  Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction. The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885, 887 (1995).  An instruction on flight is appropriate where there is some evidence from which a jury could find that the defendant fled.  *See People v. Johnson*, 171 Mich. App. 801, 804, 430 N.W.2d 828, 829 (1988).  Here, there was some evidence of flight.  Officer Pittman testified that after the Taurus was pulled over, petitioner's vehicle crossed three lanes of traffic, made a u-turn, slowed down as it approached the now-stopped Taurus, and then sped away, exceeding the speed limit and weaving in and out of traffic.  *See* Trial Tr., Vol. I, at 229-30.  The jury could conclude from this evidence that petitioner feared apprehension and attempted to flee the scene of his coconspirator's arrest, and thus was sufficient evidence to support the giving of a flight instruction.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Ineffective Assistance of Counsel (Claim IV)*

Finally, petitioner contends that his trial counsel was constitutionally deficient in several respects.  Specifically, he argues that counsel was ineffective for failing to: (1) object to prosecutorial misconduct; (2) present evidence of a lack of flight; (3) object to evidence of his prior conviction; and (4) object to evidence regarding crack cocaine.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of

25

counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.     *Analysis*

a. *Failure to Object to Prosecutorial Misconduct*

Petitioner first contends that counsel was ineffective for failing to object to the instances of

prosecutorial misconduct discussed above.  As discussed in connection with petitioner's prosecutorial misconduct claim, petitioner cannot show that the prosecutor made any improper, prejudicial comments which deprived him of a fair trial.  Because petitioner's underlying prosecutorial misconduct claim is without merit, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993); *White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).

### b.  Failure to Present Evidence of Lack of Flight

Petitioner next contends that counsel was ineffective for failing to present testimony suggesting a lack of flight.  Specifically, petitioner points to the testimony of Officer Mellado at the preliminary examination.  Officer Mellado testified at that time that he observed only two traffic violations: a failure to stop while making the u-turn, and a failure to signal while changing lanes. *See* Prelim. Exam. Tr., at 50-52.  There is not a reasonable probability, however, that the result of the proceeding would have been different had counsel presented this testimony.  First of all, the evidence of flight was tangential.  More importantly, Officer Mellado's testimony does not establish a lack of flight.  Officer Mellado's preliminary examination testimony was in large part consistent with Officer Pittman's trial testimony: both observed petitioner make a u-turn without stopping, slow down when passing the Taurus, and then speed away.  While Officer Mellado did not testify at the preliminary examination that petitioner exceeded the speed limit or describe his conduct as

"weaving," he did testify that petitioner increased his speed after passing the Taurus and changed lanes at least once without signaling.  In light of the little difference between the testimony of Officer Mellado and Officer Pittman and the limited value of the evidence, the Michigan Court of Appeals's conclusion that petitioner could not "demonstrate that there is a reasonable probability that, but for counsel's inaction, the result of the proceeding would have been different," *Arias*, 2006 WL 119143, at *9, slip op. at 10, was not unreasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object to Evidence of Prior Conviction

Petitioner next contends that counsel was ineffective for failing to object to evidence that he had prior felony convictions.  At trial, Sergeant Batchelder described for the jury the fingerprint procedure employed after petitioner was arrested.  That procedure was one employed when a person had a prior felony arrest.  *See* Trial Tr., Vol. II, at 136, 159.  The Michigan Court of Appeals concluded that petitioner was not prejudiced by counsel's failure to object, because an objection may have called more attention to the matter and because the reference to prior felonies was brief, with no testimony regarding the circumstances of those prior cases.  *See Arias*, 2006 WL 119143, at *10, slip op. at 11.  The Court should conclude that this determination was reasonable.

Contrary to petitioner's characterization, Sergeant Batchelder did not testify that petitioner had any prior felony convictions.  He testified that the procedure employed was one used on a subsequent felony *arrest*, suggesting that petitioner previously had been arrested.  However, this testimony was during a rather long, dry discussion of fingerprinting techniques, and did not explicitly state that petitioner previously had been arrested.  Nor did Sergeant Batchelder give any indication of the basis of petitioner's previous arrests.  In these circumstances, it is unlikely that the

28

jury gave any consideration, much less weight, to Sergeant Batchelder's description of the fingerprinting technique as suggesting that petitioner had prior felony convictions, and there is not a reasonable probability that an objection to this testimony would have affected the outcome of the trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Object to Crack Cocaine Evidence

Finally, petitioner contends that counsel was ineffective for failing to object to evidence concerning crack cocaine, because no crack cocaine was involved in his case. At trial, Officer Pittman testified that, in his opinion, the amount of cocaine involved indicated that the cocaine was intended for distribution, rather than for personal use. By way of example, he testified to the typical usage of a crack cocaine user. *See* Trial Tr., Vol. II, at 282. The prosecutor then questioned Officer Pittman regarding the street value of the powder cocaine seized from the defendants. *See id.* at 283. As the Michigan Court of Appeals correctly observed, petitioner has not shown how the mere mention of crack cocaine deprived him of fair trial, when it was a brief mention by the witness and it was clear that only powder cocaine was involved. Further, as the court of appeals observed, this evidence was relevant only to the intent to distribute charge, and petitioner was acquitted of that charge. Thus, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had counsel objected. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Evidentiary Hearing

Petitioner also seeks an evidentiary hearing to develop evidence in support of his ineffective assistance of counsel claims. In addressing whether an evidentiary hearing is appropriate in a habeas

corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Here, regardless of whether a hearing is permitted under § 2254(e)(2), the Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).

Here, an evidentiary hearing does not have the potential to advance any of petitioner's claims. Petitioner's ineffective assistance claims fail on the prejudice prong of the *Strickland* test, and those prejudice issues are apparent from the record as it currently stands. Thus, an evidentiary hearing is not necessary to resolve petitioner's habeas claims.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

31

Dated: 9/25/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on September 25, 2009.
>
> s/Eddrey Butts
> Case Manager